IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS RENZI                        )
                                    )      No. 16-cv-02641
        Plaintiff,                  )
                                    )      Judge Hon. Matthew F. Kennelly
v.                                  )
                                    )      Magistrate Judge Hon Susan E. Cox
UNION PACIFIC RAILROAD              )
                                    )
        Defendants.                 )
                                    )

**PLAINTIFF, THOMAS RENZI'S RESPONSE TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON COUNTS II, III & IV**

Now comes, THOMAS RENZI, by and through his attorneys, RIDGE & DOWNES, and

in support of his Response to Defendant's Motion for Partial Summary Judgment on Count II,

Count III and Count IV, states as follows:

## Legal Standard

I.      **Summary Judgment in FELA cases**

        A. **STANDARD OF REVIEW**

        In accordance with F.R.C.P. 56 and summary judgment jurisprudence, this Court must

view the evidence introduced, and all factual inferences from the evidence, in the light most

favorable to the party opposing the summary judgment. *Eastman Kodak v. Image Technical*

*Services*, 504 U.S. 451, 456-58 (1992). Any discrepancies in the factual record should be

evaluated in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)

(*citing Adjckes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The moving party bears the

burden, as an initial matter, of showing the court there is an absence of evidence to support the

1

nonmoving party's case. *Littlefield v. Forney Indep. School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmoving party's response. *Id.*

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

### B.   <u>RELEVENT FELA LEGAL PRINCIPLES</u>

The Federal Employers' Liability Act (FELA) provides that a railroad is liable for negligently causing the injury of any person while he is employed by the railroad. 45 U.S.C.A. § 51. The FELA is an injured railroad employee's exclusive tort remedy against his railroad employer for injuries sustained while working in the course and scope of his employment with the railroad in the furtherance of interstate commerce. *New York Cent. R.R. v. Winfield*, 244 U.S. 147 (1917); *Myers v. Illinois Cent. R.R. Co.,* 753 N.E.2d 560, 564 (Ill. App. Ct. 2001). It is generally held that in light of the remedial purpose of the FELA, the Act must be liberally construed in favor of the injured employee to further Congress' remedial objective. *Consolidated Rail Corporation v. Gottshall,* 512 U.S. 532, 542, 114 S.Ct. 2396 (1994). A railroad employer has a continuing non-delegable duty to use reasonable care to provide its employees a safe place to work. *Bailey v. Central Vermont Ry.,* 319 U.S. 350 (1943). Moreover, the railroad's duty of care becomes more imperative as the risk increases. *Bailey,* supra at 353. The FELA imposes a higher standard of care beyond the general duty of reasonable care that the law requires of everyone. *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958). It has been noted that the

failure to furnish a safe place to work is the most common basis for action under the FELA. *Nivens v. St. Louis Southwestern Railway Co.*, 425 F.2d 114, 118 (5th Cir. 1970).

### C. Evaluating Summary Judgment in FELA cases

In FELA cases, when evaluating the evidence to determine whether there is a genuine issue of material fact in a FELA lawsuit, several unique rules of law must be applied. First, the role that inferences play in FELA actions is especially important since "[u]nder the [FELA], the right of the jury to pass upon the question of fault and causality must be most liberally viewed...[T]he jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) (quoting *Chicago, Rock Island & Pacific R.R. Co. v. Melcher*, 333 F.2d 996, 999 (8th Cir. 1964)).

Indeed, withholding a FELA case from a jury should be exercised cautiously since a jury trial "is part and parcel of the remedy afforded railroad workers under the [FELA]." *See Bailey v. Central Vermont Ry., Inc.*, 319 U.S. 350, 354, (1943); *see also Turner v. Burlington Northern R.R. Co.*, 771 F.2d 341, 344 (8th Cir. 1985) (same).

The burden of proof necessary to present a case to a jury is "significantly lighter under FELA than . . . in an ordinary negligence case." *Smith v. Soo. Line R.R. Co.*, 617 N.W.2d 437, 439 (Minn. Ct. App¹. 2000) (citing *Habrin v. Burlington Northern Ry. Co.*, 921 F.2d 129, 132 (7th Cir. 1990)). The quantum of proof required to present a jury issue is described as a "scintilla" of evidence. *Id.* (citing *Hauser v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 346 N.W.2d 650, 653 (Minn. 1985)); *see also Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957)("the test of a [FELA] jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury

or death for which damages are sought")(emphasis added). When applying the Minnesota procedural standards, the FELA standards of proof, and the correct statutory interpretation of two supplementary federal statutes, BNSF's motion must be denied.

II. **STATEMENT OF FACTS**

The facts relevant to Thomas Renzi's Response are set forth in his Statement of facts, which are cited herein as "SF paragraph ____"

III. **PLAINTIFF'S EVIDENCE IS MORE THAN SUFFICIENT TO MAINTAIN BOTH OF HIS FRSA CLAIMS.**

**A. The FRSA's "contributing factor" test is protective of employees**

It is basic that a rail whistleblower employee does not have to prove his protected conduct was a "significant", "motivating", "substantial" or "predominant" factor in a personal action. *Araujo v. NJ Transit* 708 F.3d 152 (3rd Cir. 2013). An employee must establish the existence of a prima facia case. To do this he must show, by a preponderance of the evidence, that:

i. The employee engaged in a protected activity
ii. The employer knew or suspected, actually or constructively that the employee engaged in the protected activity
iii. The employee suffered an unfavorable personnel action
iv. The circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action.

29 C.F.R 1979.104(b)(1)(i)

UPRR acknowledges the first three elements noted above. There is also sufficient evidence brought forth by the Renzi to raise a question of fact as to whether the circumstances were sufficient to raise the inference that Renzi's FRSA protected activities were a contributing factor in the unfavorable employment action UPRR assessed against him. In recognition of that factor, a "contributing factor" is simply "any factor which alone or in connection with other factors,

4

tends to affect in any way the outcome of the decision". *Kudak v. BNSF* 768 F.3d 786, 791 (8th Cir. 2014). Accordingly, in order to survive UPRR's motion, Renzi is not required to show that his FRSA-protected activity was "the sole or even predominant cause" of his investigation or termination, nor is he required to "conclusively demonstrate UPRR's motive or even to show direct evidence thereof. *Araujo* 708 F. 3d at 1060. Based on circumstantial evidence alone Renzi has proven this factor. Charges were brought against Renzi by a supervisor, Curtis Cornwell, who had been on the job for one month prior to the charges being levied against Renzi with possibly only one in field contact. SF paragraph 4. That there were other signal maintainers who were responsible for Renzi's territory during the subject time frame who were not brought up on charges for the same violations as Renzi even though UPRR knew these other signal maintainers had been in the subject bungalow after Renzi yet did nothing to clean and maintain. SF paragraph 5,7. That UPRR brought charges against Renzi based on fraudulent evidence. SF paragraph 9, 10, 11. That the crossing for which Renzi was charged for failure to record signal testing results was not even on UPRR's grid. SF paragraph 14. That again, other maintainers who likewise would have failed to record the testing results were not charged with the same violations as Renzi even though those other two maintainers had been at the subject crossing in the months prior to Renzi being charged. SF paragraph 15. That Renzi's supervisor just happened to come upon Renzi at a jobsite because he made the wrong turn headed to a different job detail. SF paragraph 27. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Desert Palace, Inc. v. Costa* 539 U.S. 90, 100 (2003).

Ultimately, the contributing factor test is not a demanding standard and it creates a difficult obstacle for employers. *Ray v UPRR* 971 F. Supp 2d 869 (2013). Indeed, it is much

more protective of employees and thus much easier for a plaintiff to satisfy. *Araujo* 708 F. 3d at 158-59.

Renzi has met these low standards, particularly under summary judgment where all interpretations of facts are to be made in favor of Renzi. A reasonable jury could conclude that UPRR's repeatedly investigating and ultimately firing Renzi were retaliation due, in whole or in part, to his protected activities. Necessarily, an employee must rely on circumstantial evidence. Seldom will a railroad leave a "smoking gun" memorandum or email. To effect the remedial purpose of FRSA, a jury must be allowed to hear and determine the facts.

### B. There is ample evidence in the record from which a jury could conclude that Renzi's FRSA-protected activities were a contributing factor in UPRR's decision to investigate and terminate him.

Renzi "need only show a prima facia case that his FRSA protected activity was a contributing factor in his discharge by direct or circumstantial evidence. *Ray* 971 F. Supp at 884. Circumstantial evidence that protected activity was a contributing factor in an adverse employment decision may include evidence of: temporal proximity, indications of pretext, inconsistent application of employers' policies, …antagonism or hostility toward a complainant. *Ray* 971 F. Supp 2d at 885. The record in this case is dominated by evidence of inconsistent application of UPRR's policies with respect to Renzi, SF paragraph 5, 6, 7 and 15 and antagonism or hostility as to his reports of work related injuries. SF paragraphs 16, 17, 24, 25.

UPRR did not apply it's rules consistently in this case. There is evidence that similarly situated employees such as Billy Shields and Dan Raleigh violated the same rules Renzi allegedly violated in the same manner Renzi allegedly violated them yet no charges were brought against these two other signal maintainers. In fact when this fact was brought out at the investigation by UPRR, laughter ensued when it was discussed that Raleigh was scared out of the bungalow by a

6

mouse. SF paragraph 6. Additionally, when Renzi was charged for the alleged violation that ultimately led to his termination, co-worker Joe Almasy, who had been at the job site longer than Renzi, was initially charged but those charges were dismissed. SF paragraph 34. This despite the fact that when initially confronted by Nels Johnson at the job site on January 26, 2016 about the status of his job briefing book, Almasy faked a heart attack in an attempt to divert attention away from the job briefing issue. SF paragraph 40. Clearly this is disparate treatment between these two similarly situated employees.

As Courts across the country have recognized, nearly every claim of unlawful discrimination necessarily involves some element of conspiracy theory because employers rarely admit their unlawful conduct and because they are careful not to offer remarks indicating intentional discrimination. *Robin v. Espo Eng'g Corp.* 200 F. 3d 1081,1088 (7th Cir. 2000). In this case however, Renzi has evidence which points directly to the conclusion that UPRR manipulated the investigation process to rid itself of Renzi and his protected activities. SF paragraphs 9, 10 and 11. Also, the charges made against Renzi were run by Nels Johnson by Curtis Cornwell. SF paragraph 12. Therefore, the argument by UPRR that the decision to charge Renzi was not influenced by Nels Johnson is without merit.

Additionally, even though the first charges brought against Renzi (Count were dismissed, the fact that he was charged was a mark on Renzi's record that ultimately weighed against him in the charges and ultimate termination

### C. UPRR failed to prove by clear and convincing evidence that it would have fired Renzi in the absence of his FRSA protected activities

Once an FRSA complainant establishes the existence of a prima facia case, the employer may avoid liability only if it demonstrated by clear and convincing evidence that the employer would

7

have taken the same unfavorable action in the absence of that behavior. 49 U.S.C sec. 42121 (b)(2). The clear and convincing standard is more rigorous than the preponderance of the evidence standard and the courts have emphasized the steep burden that employers face under the FRSA burden shifting framework. *Araujo* 708 F. 3d at 162. Again, the mere fact that other similarly situated employees of UPRR who engaged in the same conduct as Renzi and in the same manner as Renzi, yet were not disciplined defeats UPRR's argument. SF 5, 7, 8, 32 33, 34

**IV.** **UPRR ignores the FELA's relaxed causation standard and again asks the Court to invade the province of the jury and resolve contested fact issues**

UPRR's final argument is premised on a perceived lack of evidence establishing causation between Renzi's alleged negligence and the injury. With respect to the causation element, the FELA standard provides that a railroad is liable for its negligence that "'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part – no matter how small in bringing about the injury.'" *CSX Transp., Inc. v. McBride*, 546 U.S. 685, 131 S.Ct. 2630, 2644 (2011).

In *McBride*, the U.S. Supreme Court reviewed whether the relaxed causation standard articulated 54 years earlier in *Rogers v. Missouri Pacific R.R. Co.*, 342 U.S. 500 (1957) continued to be applicable in FELA cases. 131 S.Ct. at 2634. In affirming *Rogers*, the Supreme Court relied on its previous decisions where it recognized "FELA's language on causation . . . 'is as broad as could be framed.'" *Id.* at 2636(quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)). And "[g]iven the breadth of the phrase 'resulting in whole or in part from the [railroad's] negligence,' and 'remedial goal[s],' we have recognized that, in comparison to tort litigation at common law, 'a relaxed standard of causation applies under FELA.'" *Id.* (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-43 (1994)).

8

*McBride*, sets forth the correct FELA causation standard explaining it is stripped of all common-law proximate cause standards. The question of causation comes down to whether UPRR's negligence played any part, no matter how small, in bringing about injury. *McBride*, 131 S.Ct. at 2644). Here in the pending case, there is more than sufficient evidence establishing that by UPRR sending Renzi out into an ice storm created a dangerous work environment that caused Renzi's injuries. SF paragraph 19, 20, 21, 22. It certainly was foreseeable that Renzi could suffer injury in such inclement weather

As exhaustively discussed previously, the FELA applies a relaxed causation standard, and a plaintiff need only show that a railroad's negligence "play a part – no matter how small in bringing about the injury." *McBride*, 131 S.Ct. 2644. Because there is a relaxed causation standard, it is not surprising that establishing sole cause as a matter of law is almost impossible to establish. To prevail under a sole cause theory, a railroad must produce evidence that the plaintiff's conduct acted as an intervening and independent cause. *O'Donnell v. Elgin, Joliet & Eastern Ry. Co.*, 388 U.S. 384, 394, n. 7 (1949); *Baker v. CSX Trans.*, 581 N.E.2d 770, 777 (Ill.App.Ct. 1991). In other words, the railroad must produce evidence establishing the following high threshold:

> For an intervening act, omission, or event to be the sole proximate cause, it must be, by itself, the direct and immediate cause of the injury, or must be a cause which so entirely supersedes the operation of the defendant's negligence that it alone, without the defendant's negligence contributing thereto in the slightest degree, produces the injury.

*Baker*, 581 N.E.2d at 777.

The extremely high standard was discussed in *McCarthy v. Pennsylvania R.R. Co.*, 156 F.2d 877, 881 (7th Cir. 1946), where the railroad argued the sole cause of an incident was the plaintiff's conduct. The facts of the case involved an engineer who was killed when the

locomotive he was operating derailed. The cause of the derailment was a defective journal box ("hot box") on the locomotive. As decedent operated the train from Valparaiso, Indiana to Chicago, Illinois, the defect developed. Several co-workers along the route noticed the hot box, and gave the engineer a hot box signal, which the engineer saw but ignored. Additionally, his conductor also raised the question with the engineer and suggested that they change engines. The engineer also ignored this suggestion. The engine derailed and the engineer was killed. *Id.* at 879.

The plaintiff's lawsuit was based on the defendant's violation of the Boiler Inspection Act (BIA), the predecessor of the Locomotive Inspection Act (LIA).[1] *Id.* After the jury returned a verdict for the railroad, the plaintiff appealed. As part of the appeal, the Seventh Circuit discussed whether the conduct of the engineer in ignoring co-workers' warnings (which amounted to a rules violation) relieved the railroad of all liability under the BIA. In reversing the court below, the court noted that "we have a case where the negligence of the defendant, which was a violation of the statute, continued up to the scene of the accident and was in part a contributing cause to the accident . . . ." *Id.* 881. In other words, the fault of the railroad and the plaintiff combined to cause the injury. Here, BNSF simply has not and cannot establish that Tollers' conduct acted as an intervening superseding cause that cuts off causation under the FELA.

Last, UPRR's argument suggests that the Court need only look at a single slice of evidence and view that piece in UPRR's favor which is contrary to the law. In determining whether summary judgment is properly granted, a trial court must view all evidence. And the non-moving party has "the benefit of that view of the evidence which is most favorable to him

[or her]." *Zappa*, 310 Minn. At 556, 245 N.W.2d at 260. In other words, a party moving for summary judgment may not cherry pick evidence, and argue that select evidence supports its argument while ignoring other important evidence.

UPRR has not met its burden of establishing that it is entitled to judgment as a matter of law on the issue that Renzi's injury was not foreseeable. Likewise, it was dangerous to send Renzi to work in those blizzardlike conditions. (Ex. D at p. 106; line 1-4) To the contrary, the undisputed evidence establishes that UPPR's negligence in throwing Renzi out to work in such miserable conditions resulted in Renzi's injuries.

## CONCLUSION

For all the reasons stated above, Tom Renzi has made the required showing to sustain his causes of action against UPRR on Counts II, III and IV and accordingly, asks this Court to deny defendant's Motion for Partial Summary Judgment.

Respectfully submitted,
Thomas Renzi,


By: ___*s/James T. Farnan*___
       James T. Farnan


James T. Farnan
Ridge & Downes
101 N. Wacker Drive, Suite 200
Chicago, IL 60606
Tel (312) 372-8282
Fax (312) 372-8560
jfarnan@ridgedownes.com

11

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certified that a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record as listed below by:

_____United States Mail, postage prepaid and sealed;

_____United States Certified Mail, postage prepaid and return receipt requested;

_____Hand Delivery;

_____UPS/Next Day Air;

_____Facsimile Transmission;

___X___Local Rule 5.9 Electronic Filing (U.S.D.C., ND IL); and/or

_____Email (pdf)

on April 6, 2018.

Ms. Brody E. Dawson
Ms. Sarah-Joel M. Privert
Union Pacific Railroad Company
101 N. Wacker Drive
Room 1920
Chicago, IL 60606
bedawson@up.com
smpriver@up.com

_s/James T. Farnan_

James T. Farnan
Ridge & Downes
101 N. Wacker Drive, Suite 200
Chicago, IL 60606
Tel (312) 372-8282
Fax (312) 372-8560
jfarnan@ridgedownes.com