IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS RENZI | ) | No. 16-cv-02641 |
| Plaintiff, | ) | |
| | ) | Judge Hon. Matthew F. Kennelly |
| v. | ) | |
| | ) | Magistrate Judge Hon Susan E. Cox |
| UNION PACIFIC RAILROAD | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF, THOMAS RENZI'S STATEMENT OF FACTS
IN SUPPORT OF HIS RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes Plaintiff, THOMAS RENZI, by his undersigned counsel, and submits this Statement of Facts in Support of his Response to Defendant's Motion for Partial Summary Judgment pursuant to Local Rule 56.1(a)(3):

**Relevant Facts**

The facts relevant to Thomas Renzi's response are set forth in its statement of undisputed material facts, which are cited herein as SF paragraph _____.

**Facts Related to Count II**

1. That on February 14, 2014, Thomas Renzi suffered a work-related injury to his shoulder while working as a signal maintainer for Union Pacific Railroad Company. (Ex. A, Renzi at p.21: 1-24)

2. On May 2, 2014, while THOMAS RENZI was on medical leave of absence related to the February 14, 2014 work-related accident, he received a Notice of Investigation advising that he was charged with failure to maintain records as well as failure to maintain bungalows in good condition. (Ex. A, Renzi at p.81: 11-13)

1

3. That Union Pacific Railroad Company charged THOMAS RENZI for a rodent infestation and failure to maintain inspection records based on an investigation done by Curtis Cornwell on April 23, 2014, more than 60 days after Renzi had last worked for UPRR. (Ex. B, Cornwell at p.30: 15-20)

4. That Cornwell charged Renzi with these violations even though Cornwell had only been Renzi's supervisor for one month, with only one in field exposure between Cornwell and Renzi. (Ex. B Cornwell deposition at p.44: 11-20)

5. That while Renzi was off work recovering from his work-related injury, two other signal maintainers from UPRR, Billy Shields and Dan Raleigh, were responsible for the maintenance of the subject bungalows. While Dan Raleigh was at the subject bungalow, while he was to be there cleaning and maintaining the bungalow, Raleigh was scared out of the bungalow because he saw a mouse and he was afraid of mice. (Ex. B, Cornwell at p.35: 19-23)

6. That it was a running joke within UPRR that Raleigh was scared by "Little Mickey" while inside the bungalow that he was assigned to clean and maintain. (Transcript of Hearing conducted on April 9, 2015, Ex. C, at p. 32: 37-39; p. 33: 1-6, p. 36: 5-40; p. 37 1-21).

7. That neither Shields or Raleigh were brought up on similar charges to those brought against Renzi. (Ex. B, Cornwell at p.50: 8-14)

8. UPRR charged Renzi with these retaliatory violations even though Renzi had not physically been in the subject bungalows for at least a period of two months and that during that two-month time period, these two other UPRR signal maintainers were assigned to clean and maintain the bungalow. (Ex. D, Sanchez at p.119: 11-25).

9. That during the formal hearing of this charge held on April 9, 2015, UPRR submitted photographs to the hearing officer depicting an electric code box that was allegedly infested with a mouse nest. (Ex. B, Cornwell at p.43: 7-10)

10. That the electric code box photographs submitted by UPRR at said investigation to support their charge against Renzi showed equipment (an electric code box) that does not even exist in the subject bungalow for which Renzi was charged for failure to clean and maintain. (Ex. B, Cornwell at p.43: 7-10, p.78: 16-2; p.86: 13-17; p.87: 14-17; Ex. D, Sanchez at p.126: 17-25; p. 127: 1-4)

11. That this photograph was pulled by UPRR during the formal hearing against Renzi after this fact was pointed out. (Ex. B, Cornwell at p.42: 7-9)

12. That Curtis Cornwell would have run the charges brought against Renzi past his supervisor Nels Johnson as a courtesy and at the conclusion of the investigation in April of 2015, Toby Branson talked with Nels Johnson about the investigation.(Ex. B, Cornwell at p.43: 11-24; p.44: 1-8; Exhibit I, Branson at p. 96: 10-24) Branson has had a conversation with Nels Johnson regarding Thomas Renzi's work performance and this conversation took place after Thomas Renzi's February 14, 2014 accident. (Exhibit I, Branson at p. 96: 17-24).

13. That with regard to the charge against Renzi for failure to maintain signal testing records, Renzi did indeed record the signal testing results in proper format at the Station Street Crossing and documented the testing results manually. (Ex. A, Renzi at p.88: 16-24; p.89: 1-8)

14. That it was known by Union Pacific that the subject crossing, St. Anne Crossing, was not on Union Pacific's grid and there was not an electronic maintenance planner like at other UPRR crossings. Entering signal testing results on a paper form was the only way to record those results at the St. Anne crossing. Accordingly, Renzi was instructed by his supervisors to

manually record the signal testing results on paper, which he did. (Ex. A, Renzi at p. 89: 1-10; Ex. D, Sanchez at p. 129: 22-25, p. 130: 1-6; Ex. F, Laur at p. 58: 1-24, p. 59: 1-10.

15. There were no testing results taken and recorded by UPRR signal maintainers, Dan Raleigh and Billy Shields who were likewise responsible for Renzi's territories during the months he was off on injury leave. No similar charges were brought against these two signal maintainers. (Ex. B, Cornwell at p.38: 1-24; p.39, 1-5)

16. Renzi felt he was retaliated against by Nels Johnson and Curtis Cornwell for reporting his February 14, 2014 injury. (Ex. A, Renzi at p.74: 14-21)

17. That Renzi's various supervisors, Curtis Cornwell, Jim Laur and Toby Branson had contact with Nels Johnson concerning Thomas Renzi and were involved in the investigation of the work-related injuries and the charges brought against Thomas Renzi. (Ex B, Cornwell at p.43: 11-24, p.44: 1-2; Ex. E, Nels Johnson Deposition at p.72: 2-8 p.161: 21-25; p.162: 1-2; p.162: 5-12; p.106: 17-23)

**Facts related to Count III (March 3, 2015 injury)**

18. On or about March 3, 2015 Renzi was working with electronic technician, James Laur and there was an active ice storm which covered everything with ice. (Ex. A Renzi, p.107: 1-5)

19. That Curtis Cornwell told Renzi to work inside due to the horrible weather conditions. (Ex. A, Renzi p.107: 1-21)

20. That Renzi requested of Laur that they not go out in such an active ice storm and horrible conditions yet despite Renzi's request that they not go out in such horrible conditions, Mr. Renzi was forced to go outside in this ice storm. (Ex. A, Renzi at p.108: 1-17)

21.     That while outside in this active ice storm, Renzi was hit by falling ice on his previously injured right shoulder. (Ex. A, Renzi at p.191: 8-20)

22. That it was unsafe for UPRR to order Renzi to go out and work in blizzardlike conditions. (Ex. D, Sanchez at p.107: 1-4)

23.     That following the March 3, 2015 accident, Nels Johnson travelled to Momence Illinois from Omaha Nebraska to confront Renzi about this second work related accident. (Ex. E Johnson at p.109: 4-20)

24.     That Nels Johnson felt that the accident of March 3, 2015 as described by Renzi was a bit peculiar and unusual. (Ex. E, Johnson at p.105: 4-18)

25.     That the meetings Johnson had with Renzi were hostile and that Renzi and Johnson once had a heated confrontation at a town hall meeting. (Ex. A Renzi at p.75: line 1-19; Ex. F, Laur at p.91: line 21-23)

26.     That in the early morning of January 26, 2016, Renzi arrived at the job site and Joe Almasy a fellow UPRR signal maintainer was at the job site. Once Renzi arrived at the jobsite, about two minutes later Nels Johnson and Tom Luksan arrived (Ex. A, Renzi at p.116: 19-22)

27.     That on January 26, 2016 Nels Johnson and Tom Luksan intended to go to the UPRR Momence office but Johnson "missed" a turn driving and happened to come upon Renzi and Joe Almasy at the job site (Ex. E, Johnson at p.125: 11-25; p.126: 1-5)

28.     Nels Johnson, Tom Luksan, Tom Renzi and Joe Almasy all had a job briefing once at the scene. (Ex. E Johnson at p.146: 4-18)

29.     That Tom Luksan and Nels Johnson were part of the work group upon arrival. (Ex. D, Sanchez at p.138: 8-13)

30.     That Renzi placed a shunt on the tracks and everyone saw him place the shunt yet no one objected. After Renzi placed the shunt, Tom Luksan asked Renzi if he was going to put a cone by the shunt. (Ex. A Renzi at p.128: 3-19; Ex G deposition of Joe Almasy at p. 84: 1-8)

31.     That placing a shunt means that a worker is simulating a train to the signal device at the crossing. (Ex. D Sanchez at p.24: 10-20)

32.     That Almasy had placed a shunt earlier that morning and did not fill out the paperwork that Renzi was later charged with for not filling out otherwise known as the 17 step process. (Ex G Almasy at p.86: 13-24; 87: 1-13)

33.     That Almasy in the past had noted mice and feces present in his bungalows yet was never charged by UPRR. (Ex G Almasy at p.73: 9-16)

34.     That as a result of the January 26, 2016 incident, both Almasy and Renzi were charged however the charges against Almasy were dismissed, while Renzi was terminated. (Ex G, Almasy at p.96: 17-24)

35.     That Almasy felt that the charges against Renzi were unsubstantiated. (Ex G Almasy at p.101: 20-24)

36.     That Renzi never disabled the crossing and thus was not required to fill out form 24235 in accordance with rule 8.1.15. (Ex D, Sanchez at p.145: 12-18; 148: 11-18)

37.     Nels Johnson witnessed what he categorized as a major rules violation yet did nothing about it. (Ex E, Johnson at p.150: 20-25; 152: 1-9)

38.     Mario Sanchez was a signal maintainer with UPRR from 1985 to 2017.

39. Mr. Sanchez knows of a performance tracker used by UPRR that tracks employees' injuries and investigations and that these factors have a negative impact on the employee. (Ex. D, Sanchez at p.120: 6-23: p.123:1-5)

40. That when Johnson and Luksan showed up at the jobsite and asked Renzi and Almasy for their job briefing books, Almasy faked a heart attack. (Ex. G, Luksan at p.37: 9-24; p.38:1-14)

Respectfully submitted,
Thomas Renzi,

By:    */s/James T. Farnan*         
            James T. Farnan

James T. Farnan
Ridge & Downes
101 N. Wacker Drive, Suite 200
Chicago, IL 60606
Tel (312) 372-8282
Fax (312) 372-8560
jfarnan@ridgedownes.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certified that a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record as listed below by:

_____United States Mail, postage prepaid and sealed;

_____United States Certified Mail, postage prepaid and return receipt requested;

_____Hand Delivery;

_____UPS/Next Day Air;

_____Facsimile Transmission;

___X___Local Rule 5.9 Electronic Filing (U.S.D.C., ND IL); and/or

_____Email (pdf)

on April 6, 2018.

Ms. Brody E. Dawson<br>
Ms. Sarah-Joel M. Privert<br>
Union Pacific Railroad Company<br>
101 N. Wacker Drive<br>
Room 1920<br>
Chicago, IL  60606<br>
bedawson@up.com<br>
smpriver@up.com

*s/James T. Farnan*

James T. Farnan
Ridge & Downes
101 N. Wacker Drive, Suite 200
Chicago, IL 60606
Tel (312) 372-8282
Fax (312) 372-8560
jfarnan@ridgedownes.com